**LEWISTON FIREFIGHTERS ASSOCIATION, et al.**

v.

**CITY OF LEWISTON, et al.**

Supreme Judicial Court of Maine.

Argued March 3, 1982.

Decided May 4, 1982.

McTeague, Higbee & Tucker, Maurice A. Libner (orally), Brunswick, for plaintiffs.

Skelton, Taintor & Abbott, P.A., Bryan M. Dench (orally), Frederick G. Taintor, Lewiston, for defendants.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS, CARTER and WATHEN, JJ.

ROBERTS, Justice.

Following our decision in *Lewiston Firefighters Association, Local 785 v. City of Lewiston,* Me., 354 A.2d 154 (1976) [*Lewiston I*], the plaintiffs returned to Superior Court to pursue their claim regarding their statutory right to parity pay. After receiving documentary evidence and the testimony of one witness, the Superior Court concluded that "the plaintiffs are not entitled to pay supplements or any of the other relief they seek and that plaintiffs shall recover nothing." Plaintiffs appeal from that decision. We affirm the judgment of the Superior Court.

In 1965 the Legislature amended the Lewiston City Charter to provide that firefighting personnel "shall receive a weekly rate of compensation in an amount no less than that of equivalent officers and privates in the Lewiston police department." P. & S.L., 1965, ch. 33, § 1. The amendment became effective January 2, 1966. In 1973 the plaintiffs, relying on allegations that the City had violated the parity pay provisions, brought suit seeking damages, injunctive and declaratory relief. Adverse decisions led both parties to appeal to this Court. *Lewiston I,* 354 A.2d at 156–57. We held that the Municipal Public Employees Labor Relations Law [MPELRL], 26 M.R.S.A. §§ 961–72, had, by implication, repealed the parity pay provision amendment to the Lewiston City Charter, *id.* at 162, and that from and after the effective date of the MPELRL, October 1, 1969, the firefighters' statutory and contract rights to parity pay were unenforceable. *Id.* at 162–63. We further held, however, that any *contractual* right to parity pay should properly be determined by arbitration, and that a *statutory* right to parity pay did exist *until* October 1, 1969, and was judicially enforceable subject to the statute of limitations. *Id.* at 163–64, 166–68.

The instant appeal concerns only the firefighters' *statutory* claim to parity pay between April 2, 1967, as limited by the statute of limitations, and October 1, 1969, as defined by the effective date of the MPELRL, which impliedly repealed the parity pay provisions of the Lewiston City Charter. Critical to the firefighters' claim is the number of hours which constituted a regular workweek for each department during the period in dispute. The firefighters concede that the parity pay provisions contemplated a regular firefighter's workweek of fifty-six hours whereas the regular police workweek was less. Consequently, they agree, the charter provision did not require an equal *hourly* rate of pay. They also concede that overtime and irregular hours actually worked would cause legitimate variations in actual compensation. The firefighters contend, however, that the city's alleged practices of regularly scheduling police overtime and routinely budgeting overtime pay for police resulted in a higher weekly rate of pay for policemen. The effect of such practices, they say, required that the Superior Court consider the regular police workweek to be greater than the forty hours claimed by the city for the purpose of determining the *rate* of compensation.

The Superior Court had before it considerable documentary evidence including the payroll records of the departments, the record of a vote taken in 1965 for the Lewiston Board of Finance to the effect that police officers would be paid 1½ times their regular rate for overtime "not to exceed two hours . . . per week," and evidence of a pay structure plan established by Charles M. Evans & Associates [the Evans Plan]. The budgets of the police and fire departments for 1967, 1968 and 1969 were also considered. These indicated a police overtime budget of $26,000 for 1967, $32,441 for 1968, $5,500 for 1969 and a fire department overtime budget of $2,000 for 1967, $2,500 for 1968 and $3,500 for 1969. In addition, the Court heard the testimony of former Lewiston Police Chief Lucien Longtin. Longtin, who assumed the police chief's position in November of 1968, testified that when he became police chief the manpower situation was such that police officers worked a six-day-on, two-day-off schedule, which resulted over an eight-week period in patrolmen working five days a week for six of the eight weeks and six days a week for two of the eight weeks. Longtin testified that for budgeting purposes the two additional days were paid on a weekly basis—"instead of giving them six paychecks of forty hours and two paychecks of forty-eight hours, they were given eight paychecks of forty-two hours." Police officers also worked additional overtime on the basis of need. Longtin specifically testified that his knowledge of these practices related only to their implementation after November 1968, and that he had no knowledge of the scheduling or budgeting practices prior to that date before he became chief.

The Superior Court made a number of factual findings which formed a basis for its conclusion that "[f]rom April 2, 1967 to October 1, 1969, the 'weekly rate' at which the fire department privates and police patrolmen were paid were the same. Actual earnings may have differed depending upon the hours and shifts worked, but as the 'weekly rate' upon which pay was calculat-

ed was the same, the parity requirement of the statute and the city charter were met." Judgment was accordingly entered for the defendant.

On appeal the plaintiffs agree with most of the factual findings made by the Superior Court. The thrust of appellants' argument on appeal is that the evidence did not support either the finding of the Superior Court that the Evans Plan was based on a forty-hour workweek for policemen and a fifty-six-hour workweek for firemen or the finding that it is not possible to assign any one factor as the reason for the difference between actual take-home compensation of police officers and firefighters during the period in dispute.

We review the findings made below under the clearly erroneous standard. *Harmon v. Emerson*, Me., 425 A.2d 978, 981 (1981); M.R.Civ.P. 52(a). "The essential impact of the 'clearly erroneous' rule is that the trial judge's findings stand unless they clearly cannot be correct because there is *no* competent evidence to support them." *Harmon*, 425 A.2d at 982 (emphasis in original). The issue before the Superior Court was whether similarly ranked firefighters and police officers in Lewiston received the same rate of pay during the period in dispute. The Superior Court found that the firefighters' rate of pay was based upon a fifty-six-hour workweek and that the police officers' rate of pay was based upon a forty-hour workweek. The evidence before the Court justified, if not compelled these findings.

We are aware that the evidence demonstrated that *actual* earnings often differed. Neither evidence of routine police budgeting of overtime nor evidence that police officers worked an extra day every four weeks and were compensated therefor with paychecks averaged on a weekly basis, however, compelled a conclusion that the basic police workweek was other than forty hours. The evidence before the Superior Court did not suggest that actual earnings of police officers and firefighters of similar

rank differed as a result of a violation of the parity pay provisions of the City Charter. Rather, our review of the evidence presented below leaves no doubt that the Superior Court correctly found that the differences in actual take-home compensation between the members of the two departments cannot be attributed to any one factor.

The appellants herein failed below to sustain their burden of proving any violation of the parity pay provision of the Lewiston City Charter. Accordingly, the decision of the Superior Court must stand.

The entry is:

Judgment affirmed.

All concurring.