Vincent **HARE**

v.

**LUMBERMENS MUTUAL CASUALTY COMPANY.**

Supreme Judicial Court of Maine.

Argued Jan. 18, 1984.

Decided Feb. 23, 1984.

Jordan & Goodridge, Donald H. Goodridge (orally), Houlton, for plaintiff.

Rudman & Winchell, George F. Terry, IV (orally), David King, Bangor, for defendant.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

GLASSMAN, Justice.

The plaintiff, Vincent Hare, claiming coverage under the Uninsured Motorists Coverage of his automobile liability insurance policy, brought this action against his insurer, Lumbermens Mutual Casualty Company. The Superior Court, Aroostook County, found the language of the policy precluded the plaintiff's claim, and granted the defendant's motion for summary judgment. On appeal, the plaintiff contends there exists a genuine issue as to the proper interpretation of language in the policy, making summary judgment inappropriate. We agree, and vacate the judgment of the Superior Court.

In order to test the propriety of the entry of summary judgment, we accept the following uncontroverted facts as true. The plaintiff was operating his farm tractor on Route 1 in Hodgdon, Maine, on September 20, 1979, when it was struck from behind by a vehicle driven by a Donald J. McGary, Jr. The plaintiff sustained extensive personal injuries and property damage as a result of the collision.

At the time of the accident, the plaintiff's farm tractor was not insured, but two automobiles he owned were covered by a liability insurance policy issued by the defendant.

On October 15, 1980, the plaintiff signed a release and settlement of his claim against McGary for $23,859.71. The plaintiff did not notify or communicate with the defendant prior to entering into this settlement agreement.

On December 17, 1982, the plaintiff instituted this suit against the defendant, demanding recovery under the uninsured motorists coverage of his liability policy, pursuant to 24–A M.R.S.A. § 2902 (Supp.1983–1984).[1] The plaintiff sought payment of $45,000 for injuries and loss of income not compensated by the settlement he received from McGary. The defendant asserted among other affirmative defenses (1) an

---

1. 24–A M.R.S.A. § 2902(1) (Supp.1983–1984) provides:

    Uninsured vehicle coverage; insolvency of insurer

    1. No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured, underinsured or hit-and-run motor vehicles, for bodily injury, sickness or disease, including death, resulting from the ownership, maintenance or use of such uninsured, underinsured or hit-and-run motor vehicle. The coverage herein required may be referred to as "uninsured vehicle coverage." For the purposes of this section, "underinsured motor vehicle" means a motor vehicle for which coverage is provided, but in amounts less than the minimum limits for bodily injury liability insurance provided for under the motorist's financial responsibility laws of this State or less than the limits of the injured party's uninsured vehicle coverage.

exclusion in the plaintiff's uninsured motorists coverage barred the plaintiff's claim, and (2) the plaintiff's release of McGary, entered into without notice to or consent of the defendant, prohibited any recovery by the plaintiff under the terms of his policy.

The defendant moved for summary judgment. The court granted the defendant's motion, finding the language contained in the policy permitted the plaintiff to insure his tractor and, therefore, the exclusion to the policy's uninsured motorists coverage precluded the plaintiff's recovery.[2] The court stated:

> The definition of "your covered auto" ... is broad enough to have permitted Plaintiff to have insured his tractor. Other uses of "vehicle" in the policy make it clear that the phrase includes more than cars and trucks. Because Mr. Hare was operating an uninsured vehicle at the time of the accident, and that vehicle was his own, he does not benefit from the fact that he had provided insurance on other vehicles.

In reviewing the correctness of the court's grant of the motion for summary judgment, "we view the evidence in the light most favorable to the party against whom the motion has been granted and accord that party the full benefit of all favorable inferences that may be drawn from the evidence." *Lidstone v. Green,* 469 A.2d 843 at 845 (Me.1983). Having examined the present record in this light, we decide the entry of summary judgment for the defendant was erroneous.

■ We agree with the Superior Court that uninsured motorist coverage on one of a number of vehicles owned by an insured does not extend the benefits of such coverage, for no premium, to all other vehicles owned by that insured. *See* 8C J. Appleman, *Insurance Law and Practice* § 5078.15 at 179 (1981); *Rhault v. Tsagarakos,* 361 F.Supp. 202, 206 (D.Vt.1973). In *Wescott v. Allstate Insurance,* 397 A.2d 156, 166 (Me. 1979), we recognized the "obvious design" of our uninsured motorist coverage statute: "The legislative intent is to benefit all insured motorists by throwing the burden of compensating for injuries which would otherwise go without redress from the individual victim to the insurance industry for a premium."

The policy's exclusionary language, on which the Superior Court relied, states:

EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for bodily injury sustained by any person:

> 1. While occupying,[3] or when struck by, any motor vehicle owned by you or any family member which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

■ The language of the exclusionary provision in the policy prevents recovery if, at the time the bodily injuries are sustained, the insured is occupying his own uninsured "motor vehicle." We find it by no means clear that a farm tractor is properly deemed a "motor vehicle." As we recognized in *Lane v. Hartford Insurance Group,* 447 A.2d 818, 820 (Me.1982), Title 24–A does not define "motor vehicle," and the definitions of "motor vehicle" and "farm tractor" given in Title 29 [4] are specifically limited in application to that title. *See* 29 M.R.S.A. § 1 (1978 & Supp.1983–1984). In the absence of a statutory definition, we look to the policy

---

2. The Superior Court order specifically states it did not reach the "no consent to settlement" argument put forth by the defendant insurer. We intimate no opinion as to the merits of this affirmative defense, or whether the summary judgment is sustainable on this ground.

3. The policy defines "occupying" as "in, upon, getting in, on, out, or off" (footnote added).

4. 29 M.R.S.A. § 1(7), on the date the collision occurred, defined "motor vehicle" as: "any self-propelled vehicle not operated exclusively on tracks, including motorcycles, but not including snowmobiles as defined in Title 12, section 1971." Section 1(3) defined "farm tractor" as: "any motor vehicle designed and used primarily as a farm implement for drawing plows, mowing machines and other implements of husbandry."

itself. The definition there must control our interpretation of the policy's language, unless it is more restrictive than 24–A M.R. S.A. § 2902 permits. *Lane,* 447 A.2d at 820.

The definitional section of the policy provides no definition of "motor vehicle" *per se,* but defines "Your covered auto" as:

"Your covered auto" means:

1. Any vehicle shown in the Declarations.

2. Any of the following types of vehicles on the date you become the owner:

a. a private passenger auto; or

b. a pickup, panel truck or van, not used in any business or occupation other than farming or ranching

. . . .

3. Any trailer you own.

4. Any auto or trailer you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

a. breakdown;

b. repair;

c. servicing;

d. loss; or

e. destruction.

The definition obviously does not specifically exclude farm tractors, but the emphasis here, and in numerous other parts of the policy,[5] on private passenger autos, pickups, panel trucks, vans, and trailers, at least makes the intent to exclude farm tractors one plausible interpretation of the policy's terms. Nor is there any explicit inclusion of farm tractors anywhere in the policy.

---

5. For example, provisions of the policy limiting or excluding liability coverage in certain situations three times mention only private passenger autos, pickups, panel trucks, vans, and trailers. The same list of vehicles appears in the medical payments coverage section of the policy.

6. We are especially reluctant to decide no alternate interpretation of the policy's language was possible, in light of the observation we made in *Wescott:*

As we have previously recognized, "[w]hether contract language is ambiguous is a question of law for the court." *Lidstone v. Green,* 469 A.2d 843 at 846 (Me. 1983). "Contract language is ambiguous when it is reasonably susceptible of different interpretations." *Portland Valve, Inc. v. Rockwood Systems Corp.,* 460 A.2d 1383, 1387 (Me.1983). In the present case, we find the terms "vehicle" and "motor vehicle" in the policy to be susceptible of various interpretations,[6] and the court's finding that no ambiguity exists to be erroneous.

■ The proper interpretation of ambiguous contractual language is to be determined by the trier of fact. *Lewiston Firefighters Association v. City of Lewiston,* 354 A.2d 154, 163 (Me.1976), appeal after remand, 444 A.2d 1009 (1982); *Blue Rock Industries v. Raymond International, Inc.,* 325 A.2d 66, 72–73 (Me.1974). In the present case, the entry of summary judgment for the defendant deprived the plaintiff of the opportunity to present to a trier of fact evidence tending to support his contention that his farm tractor was not insurable under the defendant's liability insurance policy. The entry of summary judgment, while the factual issue of the policy's proper interpretation remains unresolved, was erroneous and must be vacated.

The entry is:

Judgment vacated.

All concurring.

In contrast with the liberal construction to be given the remedial statute mandating uninsured motorist coverage in all liability insurance policies issued with respect to any vehicle registered or principally garaged in this State, courts, in order to carry out the primary purpose of such legislation, will construe conditions and exceptions of the insurance contract, inserted therein in an attempt to limit the coverage prescribed by the statute, strictly against the insurer and liberally in favor of the insured.

397 A.2d at 167 (citations omitted).